IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DIANE R. PURSER,                  :
                                :
      Plaintiff,           :
                                :
      v.                :     CIVIL ACTION NO.
                                :     1:08-CV-2466-CAP-CCH
WEINSTOCK & SCAVO, P.C. and :
LOUIS R. COHAN,          :
                                :
      Defendants.      :

## O R D E R

    Attached is the report and recommendation of the United States Magistrate Judge in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Civil Local Rule 72.

    Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation within ten (10) days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the report and

recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review.  <u>United States v. Slay</u>, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

IT IS SO ORDERED this 6th day of November, 2008.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DIANE R. PURSER, | : | CIVIL ACTION NO. |
| | : | 1:08-CV-2466-CAP-CCH |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WEINSTOCK & SCAVO, P.C. and | : | |
| LOUIS R. COHAN, | : | **FINAL  REPORT  AND** |
| | : | **RECOMMENDATION  ON  A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff filed the above-captioned action on July 31, 2008.  In the Complaint [1], Plaintiff alleges that Defendants Weinstock & Scavo, P.C. ("W&S") and Louis R. Cohan ("Cohan") violated the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692 *et seq*.  According to the allegations in the Complaint, Plaintiff contends that Cohan and W&S violated the FDCPA when Cohan, acting as an attorney representing the defendant in a separate action brought by Plaintiff under the FDCPA, deposed Plaintiff and asked certain questions of her regarding a debt. Plaintiff has also asserted claims against Defendants under the Georgia Fair Business Practices Act ("Ga. FBPA"), O.C.G.A. § 10-1-390 *et seq.*, and the Georgia Unfair or Deceptive Practices Toward the Elderly Act ("Ga. UPTEA"), O.C.G.A. § 10-1-850,

*et seq.*, based on the same alleged conduct that gave rise to the Plaintiff's claim against Defendants under the FDCPA.

The action is now before the Court on Defendants' Motion to Dismiss [3], Defendants' Motion to Transfer Case to Judge Forrester [4], Plaintiff's Motion for Leave to File Compromise and Release Agreement Under Seal [10], and Defendants' Motion for Sanctions [11]. For the reasons discussed below, Defendants' Motion to Transfer Case to Judge Forrester [4] is **DENIED**, and Plaintiff's Motion for Leave to File Compromise and Release Agreement Under Seal [10] is **GRANTED**. Furthermore, **IT IS RECOMMENDED THAT** Defendants' Motion to Dismiss [3] be **GRANTED** and that Defendants' Motion for Sanctions [11] be **DENIED**.

## I.    <u>BACKGROUND FACTS</u>

This action arises out of conduct that occurred during a deposition taken of Plaintiff on or about August 3, 2007, in a separate action: <u>Purser v. Trauner, Cohen & Thomas, LLP et al.</u>, Civil Action No. 1:07-CV-0395-JOF ("*Purser I*"). In *Purser I*, Plaintiff filed a complaint on February 14, 2007, asserting a claim under the FDCPA against defendants Trauner, Cohen & Thomas, L.L.P., CACV of Colorado, LLC, and Collect America, Ltd. <u>See</u> *Purser I* Complaint, filed on Feb. 14, 2007. In the course

2

of discovery in *Purser I*, on or about August 3, 2007, Cohan, acting as counsel for the

defendants in that action, conducted a deposition of Plaintiff.  See Pl. Dep. [52] taken

Aug. 3, 2007 in *Purser I* (transcript filed October 5, 2007).  During that deposition,

Cohan questioned the Plaintiff at length regarding her ability and intention to pay the

underlying credit card debt that gave rise to her FDCPA claims against the *Purser I*

defendants, and engaged in other conduct that Plaintiff's counsel objected to as

unethical, unprofessional and abusive.  See Pl. Dep. taken Aug. 3, 2007 in *Purser I*

[52] at 20-24.  In particular, Cohan repeatedly asked the Plaintiff why she had not paid

the credit card debt:

> Q.  Okay.  Now, this all starts with a credit card, right?
> A.  Yes, sir.
> Q.  And did you make charges on that credit card?
> A.  I did and I believe my husband did also.
> Q.  Okay.  And for how many years did you use that credit card and make those charges?
> A.  I'm not sure.
> Q.  Was it a long time?
> A.  I don't believe so.
> Q.  Do you have any idea in the world?
> A.  No, sir.  I don't.
> Q.  What made you stop using that credit card?
> A.  I'm not sure. . . .
> Q.  And why won't you pay for that credit card?
>   MR. KAIDEN [Plaintiff's counsel]:  OBJECTION.
> Q.  (By Mr. Cohan) Go ahead, please.
> A.  At that time, I – I didn't have an income coming in and then when I did, my husband said he was going to take care of it.

3

Q. Okay.

A. So, I, you know, trusted my husband that he was going to take care of because when you're married 30-something years, you, you know, trust your mate.

Q. Sure. Now, when you say you didn't have an income, I assume your husband continued to have an income.

A. At one time, he was out of work for a year or so.

Q. Okay. And so how long has he been back to work?

A. Several years.

Q. And in those last several years, what's the reason why y'all haven't paid the credit card?

A. I don't know.

Q. Is there any particular reason why you haven't paid for it?

A. No, sir.

Q. You just didn't?

A. Well, it was off my credit report as being in collection.

Q. Okay. So it wasn't affecting your credit and you decided not to pay it. Is that fair?

  MR. KAIDEN: I'm going to object to the form of the question.

Q. Go ahead, please.

A. Sir, can you repeat that?

Q. Sure. The credit account was no longer affecting your credit and so you decided not to pay for the credit card?

A. I didn't know who to pay it to.

Q. Is that the only reason you didn't pay it?

A. As far as I'm concerned, yes.

Q. So if I tell you today who to pay, you would pay it?

  MR. KAIDEN: Objection to the form of the question.

A. It depends on what my attorney advises me.

Q. Well, irrespective of what your lawyer may advise you, do you know of any reason why you shouldn't pay that credit card today?

  MR. KAIDEN: Object to the form of the question. . . .

  ****

Q. Okay. And would it matter to you what you bought with that credit card over the last ten or 15 years, 20 years?

A. No, sir.

Q. Then what do you need them for?

4

> A.  Because you asked if I had it.
>
> Q.  You're just trying to make trouble?
>
> A.  And you asked if I still had all the stuff.
>
> MR. KAIDEN:  Objection.  Objection.  Now you're trying to harass her.  You're being harassing and abusive and I insist that you change your tone with her.  She's a sick woman and I want you to change your tone with her or I'll file a protective order and this thing will be over.
>
> Q.  (By Mr. Cohan)  Ms. Purser, are you just trying to come up with reasons not to pay your credit cards?
>
> A.  No, sir.
>
> MR. KAIDEN:  Objection.  These is are – this is not –
>
> THE WITNESS:  I would –
>
> MR. KAIDEN:  Excuse me.  This not an issue in this case.  The issue is the FDCPA, not whether she bought things with the credit card or not.  It's the collection method, not the things she purchased on credit.
>
> MR. COHAN:  I beg to differ.  You made the validity of the account an issue in this case.
>
> MR. KAIDEN:  No, no, no, no.  Read your FDCPA cases.  It doesn't matter if she charged things, if she owes the debt or does not owe the debt.  It says it right in the preamble.

Pl. Dep. taken Aug. 3, 2007 in *Purser I* [52] at 20-24, 46-47.

At the end of Plaintiff's August 3, 2007 deposition, the parties agreed to suspend the deposition in the hope of settling the matter, and thereafter, the *Purser I* defendants attempted to re-depose Plaintiff on August 22, 2007.  See Pl. Dep. taken Aug. 3, 2007 in *Purser I* [52] at 114-115; Pl. Mot. for Protective Order [33] filed August 21, 2007.  On August 21, 2007, Plaintiff filed a motion for a protective order asking the court to preclude the *Purser I* defendants from taking Plaintiff's deposition

on the ground that Cohan had engaged in unethical, unprofessional, and abusive conduct towards Plaintiff in the August 3, 2007 deposition. <u>See</u> Pl. Mot. for Protective Order [33] filed August 21, 2007 in *Purser I*.

In an Order filed December 14, 2007 in *Purser I*, Judge Forrester granted the Plaintiff's motion for protective order, finding that Cohan asked numerous questions of Plaintiff during the Plaintiff's August 3, 2007 deposition that were improper and that were not designed to gather facts relevant to the underlying FDCPA action but were instead designed to intimidate Plaintiff into settling her claims against the defendants. <u>See</u> Order [75] in *Purser I* filed on December 14, 2007, granting the Plaintiff's Motion for Protective Order [33]. In particular, Judge Forrester stated as follows:

> It is clear to the court that Mr. Cohan's intention going into the deposition and with his conduct throughout was to intimidate Plaintiff into settling her claims at the table without the advice of her counsel. Mr. Cohan was not using the deposition for its proper purpose of establishing testimony under oath by a party to the litigation. He was not using it to gather facts to move forward in the discovery process. Mr. Cohan used the deposition to pressure Plaintiff and her counsel into settling her case. Mr. Cohan's behavior in the deposition resembles that of a schoolyard bully taunting his classmates. Based on Mr. Cohan's performance in the recessed deposition of August 3, 2007, the court has no confidence that a renewed deposition would serve any purpose useful to the litigation. For these reasons, the court GRANTS Plaintiff's

6

> motion for a protective order [33-1].  The court GRANTS Plaintiff's
> motion to supplement Plaintiff's motion for a protective order [43-1].
>
>   As the holding in this order rests on an implied finding of violations of
> the Georgia Rules of Professional Conduct, the Clerk of Court is
> **DIRECTED** to **SERVE** this order on the State Bar of Georgia.

Order [75] in *Purser I* filed on December 14, 2007, at 14.

Plaintiff subsequently amended the complaint in *Purser I* to add allegations

relating to Cohan's conduct during Plaintiff's August 3, 2007 deposition.  In the

Second Amended Complaint filed in *Purser I* on February 20, 2008, Plaintiff alleged

as follows:

> 67.  On or about August 3, 2007, defendants Trauner, Cohen, CACV and
> Collect America took plaintiff's deposition. See Depo. Purser [Dkt. 52].
>
> 68.  During said deposition, defendants through their counsel, proceeded
> to inquire into plaintiff's husband's willingness and ability to pay the
> alleged debt.  See Plaintiff's Exhibit "7."
>
> 69.  Despite plaintiff's counsel's objections, defendants proceeded to do
> the following:  Defendants' counsel inquired as to why plaintiff' [sic]
> husband will not pay the alleged debt; Defendants' counsel inquired as
> to plaintiff's husband's current employment; implications as to plaintiff's
> husband's liability for the alleged debt; inquires as to competing
> creditors; defendants' counsel's derogatory commentaries about
> plaintiff's marriage, and defendants' counsel succeeds in making
> plaintiff cry over her husband's failure as a husband.  See Depo. Purser
> [Dkt. 52].

> 70.   By continuing their collection campaign at the deposition in question, defendants violated §§ 1692c(a)(2), 1692c(c), 1692d, 1692e, 1692e(2)(A), 1692e(7), 1692e(10), and 1692f. . . .

*Purser I* Second Amended Compl. [98] filed on Feb. 20, 2008 (page citations omitted); see also *Purser I* Second Amended Compl. [98] at ¶¶ 74-76, 80-82 (detailing other alleged violations of the FDCPA that occurred during Plaintiff's August 3, 2007 deposition as a result of Cohan's questioning Plaintiff about her debt).

Although Plaintiff included allegations in the Second Amended Complaint that related to the conduct of Cohan during the Plaintiff's August 3, 2007 deposition, Plaintiff did not amend the complaint in *Purser I* to add either Cohan or W&S as defendants.  Nevertheless, Plaintiff sent a demand letter on or about May 5, 2008, to Cohan and W&S seeking damages in the amount of $125,000 from Cohan and $125,000 from W&S for alleged violations of the FDCPA, the Ga. FBPA and the Ga. UPTEA.  See *Purser I* Order [161] dated June 23, 2008.  Subsequently, Judge Forrester entered an Order clarifying his previous ruling regarding Cohan's conduct during the Plaintiff's August 3, 2007 deposition in which he stated that he made no explicit finding that Cohan's conduct had violated a rule of professional ethics:

> While the court understands the arguments raised by Mr. Weinstock and the reasons for them, the court did not make any ruling on a matter of

8

professional ethics in any of its orders related to the August 3 deposition. The court did not need to find any rule of professional ethics was violated to grant Plaintiff's motion for a protective order, and Mr. Weinstock does not revisit the appropriateness of the protective order. While a rule of professional ethics was arguably implicated, the court found the protective order was necessary based on the totality of the circumstances without making any finding that Rule 4.2(a) was violated. As no prior order of the court found a Rule 4.2(a) violation, the court will not reconsider its orders on that basis.

The court notes one other matter that is unrelated to the instant case. Mr. Weinstock attached correspondence from Plaintiff's counsel to Mr. Cohan and the firm of Weinstock & Scavo, dated May 5, 2008, serving as notice under Georgia's Fair Business Practices Act of 1975, O.C.G.A. §§ 10-1-390, *et seq*. In that letter, Plaintiff's counsel seeks $125,000 from Mr. Cohan and $125,000 from Weinstock & Scavo based upon the conduct at the August 3 deposition pursuant to the Fair Debt Collection Practices Act, the Georgia Fair Business Practices Act, and the Georgia Unfair or Deceptive Practices Toward the Elderly Act. Before such action would be undertaken by Plaintiff's counsel, the court assumes Plaintiff's counsel would need to consider whether the action had any arguable merit. While the Fair Debt Collection Practices Act can be said to cover the actions of debt collectors, including attorneys, there is no indication that it covers acts of litigation in defending a suit under the Fair Debt Collection Practices Act. *See, e.g.*, *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 234-35 (4th Cir. 2007) (noting the "FDCPA does not apply to commercial litigation: it covers debt collection . . . ."). *See also Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007) (communications to debtor's attorney not actionable under FDCPA because when "an individual is represented by counsel who fields all communications relevant to the debt collection, these concerns quickly evaporate"); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior.").

*Purser I* Order [161] dated June 23, 2008, at 1-3.

Thereafter, on June 25, 2008, the parties in *Purser I* filed a Joint Motion to Dismiss on the ground that the parties had reached a settlement resolving all the claims. See Joint Motion to Dismiss [162] entered June 25, 2008 in *Purser I*. In an Order [163] dated June 27, 2008, Judge Forrester granted that Joint Motion to Dismiss. See Order [163] entered June 27, 2008 in *Purser I*. In the Final Judgment terminating the *Purser I* action, Judge Forrester wrote:

> IT IS THEREFORE ORDERED that this action is hereby dismissed with prejudice as to all parties and all issues. The Clerk is directed to close the file. All relief not expressly granted in this judgment and in the order providing for dismissal is hereby denied.

*Purser I* Final Judgment [164] dated June 27, 2008, at 1.

Plaintiff then filed the instant action against W&S and Cohan on July 31, 2008, asserting claims against them under the FDCPA, the Ga. FBPA and the Ga. UPTEA based on Cohan's conduct during the Plaintiff's August 3, 2007 deposition taken in *Purser I*.

10

## II.    DISCUSSION

### A.    Defendants' Motion to Transfer Case to Judge Forrester

The undersigned notes that this action is currently assigned to The Hon. Charles A. Pannell as the District Judge.  The Defendants have moved to transfer this action to Judge Forrester on the grounds that:  this action arose out of conduct that occurred during the pendency of *Purser I*, this action involves the same or similar claims that Plaintiff asserted in *Purser I* (albeit against different defendants), Judge Forrester is familiar with the previous proceedings that occurred in *Purser I*, and this action will involve consideration of Judge Forrester's previous rulings in *Purser I*.  Defendants argue that a transfer of this action to Judge Forrester "would serve the expeditious administration of justice to avoid the replication of judicial resources."  Defs. Br. [4] at 7.

The Court has set forth a summary of the *Purser I* proceedings above.  The Court finds that, although Judge Forrester's rulings regarding the Plaintiff's August 3, 2007 deposition may be relevant in this action to establish the context of the conduct giving rise to Plaintiff's claims, Defendants have not demonstrated that a transfer to Judge Forrester is required for the "expeditious administration of justice."

11

First, the undersigned notes that the *Purser I* case was terminated on June 27, 2008 and is no longer pending before Judge Forrester; thus, pursuant to the Internal Operating Procedures ("IOP") of this Court, this action is not considered a "related" case to the *Purser I* action. The Internal Operating Procedures of the Northern District of Georgia provide for the reassignment of related cases to the same District Judge, in relevant part, as follows:

> **905-2.  Reassignment of Cases.**
>
>    **(a)  Related Cases.**  Whenever a case is filed in which the pendency of a previously filed related case is indicated on the civil cover sheet or whenever the possibility of a pending related case comes to the attention of the Clerk by other means, the Clerk shall make an independent determination as to whether the cases are related. All related cases shall be assigned to the same judge.
>
>    For purposes of assignment, cases are related whenever the later-filed case involves: . . .
>
>    (2)  The same issue of fact or arises out of the same event or transaction included in an earlier numbered pending suit.

IOP 905-2, N. D. Ga.

Thus, the IOP require reassignment of this action to Judge Forrester only if this case involves the same issues of fact, or arises out of the same event or transaction in an earlier *pending* suit. In this case, *Purser I* is no longer pending; accordingly, the

Court finds that this action can not be considered a "related case" under the IOP that requires a reassignment of this action to Judge Forrester. Furthermore, it is not clear that this action involves the same issues of fact, or arises out of the same event or transaction in the earlier suit. In *Purser I*, Plaintiff initially asserted claims against the defendants that are wholly unrelated with the events that give rise to the claims asserted against Cohan and W&S in this action. Indeed, when Plaintiff filed the *Purser I* action on February 14, 2007, the August 3, 2007 deposition that forms the basis of the instant action had not yet occurred. Moreover, although Plaintiff later amended the complaint in *Purser I* to include allegations that involved the conduct of Cohan during the August 3, 2007 deposition, Plaintiff never attempted to add Cohan or W&S as defendants in the *Purser I* action.

Finally, the Court finds that Judge Forrester's rulings regarding Cohan's conduct during the Plaintiff's August 3, 2007 deposition in *Purser I*, while relevant as background information, are not binding in this action. While Judge Forrester held that "a rule of professional ethics was arguably implicated" by Cohan's conduct during the August 3, 2007 deposition, he did not hold that Cohan violated a specific rule of professional conduct. See *Purser I* Order [161] dated June 23, 2008, at 1-3. In addition, Judge Forrester also specifically stated that the matter involving the

13

Plaintiff's purported claims against Cohan and W&S under the FDCPA, Ga. FBPA, and the Ga. UPTEA are "unrelated to the instant case." *Purser I* Order [161] dated June 23, 2008, at 3. Thus, at the time that *Purser I* was still pending before Judge Forrester, he stated his opinion that any claims Plaintiff might bring against Cohan and W&S were unrelated to the claims against the *Purser I* defendants.

Accordingly, for all these reasons, Defendants' Motion to Transfer Case to Judge Forrester [4] is **DENIED**.[1]

B.    Plaintiff's Motion for Leave to File Compromise and Release Agreement Under Seal

Plaintiff has moved for an order from the Court allowing her to file the Compromise and Release Agreement entered into by the parties in *Purser I* under seal in this action, as an exhibit to her response to Defendants' Motion to Dismiss. According to Plaintiff, the terms of the Compromise and Release Agreement include a confidentiality provision, however, which requires that the terms be kept

---

[1] Furthermore, the Court notes that Judge Forrester is aware of this motion and this case, does not claim any special knowledge that would make its ultimate disposition more expeditious if the case were assigned to him, and, as a Senior Judge with some control over the assignment of cases to his docket, has expressed no interest in having the instant action reassigned to him.

confidential "except to the extent required by a court of competent jurisdiction." <u>See</u>
Pl. Br. [10] at 1.  In response, Defendants argue that the Compromise and Release
Agreement entered into by the *Purser I* parties is irrelevant to the issues in the instant
action and thus, argue that Plaintiff should not be permitted to file the Compromise
and Release Agreement at all.  In the alternative, Defendants request that, should the
Court be inclined to allow Plaintiff to file the *Purser I* Compromise and Release
Agreement in this action, the Court order that Plaintiff file a complete unredacted
copy of the agreement.

The Court will address the parties' respective arguments regarding the issue of
*res judicata* and the *Purser I* Compromise and Release Agreement in its discussion
of Defendants' Motion to Dismiss *infra*.  The Court finds that Defendants' argument
regarding the relevance of the *Purser I* Compromise and Release Agreement,
however, does not bear on the issue of whether the Plaintiff shall be permitted to file
the document under seal.  Accordingly, Plaintiff's Motion for Leave to File
Compromise and Release Agreement Under Seal [10] is **GRANTED**.  Plaintiff may
file the Purser I Compromise and Release Agreement under seal, but Plaintiff must file
a complete unredacted copy of such agreement.

15

C.    Defendants' Motion to Dismiss

Defendants have moved to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.  Defendants argue that Plaintiff has failed to state a claim against them under the FDCPA, the Ga. FBPA, or the Ga. UPTEA because the face of Plaintiff's complaint reflects that Plaintiff can prove no set of facts to support the alleged claims.

(1)    Standard under Rule 12(b)(6)

When evaluating a motion to dismiss under Rule 12(b)(6), the Court can not consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true.  Dismissal is proper if the complaint lacks an allegation regarding an element required to obtain relief.  See, e.g., Craighead v. E.F. Hutton & Co., 899 F.2d 485 (6th Cir. 1990) (dismissal proper for failure to allege facts sufficient to establish elements necessary for recovery under securities laws); Blum v. Morgan Guarantee Trust Co. Of New York, 709 F.2d 1463 (11th Cir. 1983).  In order for a complaint to survive a motion to dismiss under Rule 12(b)(6), it need not contain detailed factual allegations, but "only enough facts to state a claim to relief that is

16

plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007); <u>see</u> <u>also</u> <u>Horton v. Williams</u>, 2007 WL 1575974, *1 (M.D. Ala. 2007).

In the instant action, Plaintiff has referenced in the Complaint the record of the *Purser I* action, and in particular, the transcript of the Plaintiff's August 3, 2007 deposition taken in *Purser I.* <u>See</u> Compl. [1] at ¶ 15. Thus, because the transcript of the August 3, 2007 deposition is specifically referenced in the Complaint, it may be considered as part of the pleadings for the purposes of the Defendants' Motion to Dismiss. <u>See</u> <u>Brooks v. Blue Cross and Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal"). Accordingly, the Court has considered the transcript of Plaintiff's August 3, 2007 deposition in *Purser I* and the other documents filed as part of the record in *Purser I* in its discussion herein.

> (2)    <u>Plaintiff's Claims under the Fair Debt Collection Practices Act</u>

Plaintiff contends that Cohan's conduct during the August 3, 2007 deposition in *Purser I* violated the FDCPA on various grounds. In particular, Plaintiff alleges

17

that Cohan's conduct violated 15 U.S.C. §§ 1692c(a)(2), 1692c(c), 1692d, 1692e, 1692e(2)(A), 1692e(5), 1692e(7), 1692e(10), and 1692f.

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e).  The FDCPA prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The FDCPA is a strict liability statute and thus does not require a showing of intentional conduct on the part of a debt collector; furthermore, a single violation of the statute is sufficient to establish civil liability. See Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2nd Cir.1993).  In order to establish a claim under the FDCPA, Plaintiff must show that the Defendant is a debt collector and that it engaged in some act prohibited by the FDCPA, or failed to disclose information required by the FDCPA, in attempting to collect from Plaintiff on her consumer debt.  See Kaplan v. Assetcare, Inc., 88 F. Supp.2d 1355, 1360-61 (S.D. Fla. 2000).

In the instant action, Defendants argue that the Court should dismiss Counts One through Four of Plaintiff's Complaint because Plaintiff has failed to state a claim under the FDCPA.  In particular, Defendants first argue that Plaintiff's FDCPA claims have already been litigated in *Purser I* and are thus barred under the doctrine of *res*

18

*judicata*.  Second, Defendants argue that, even if the Plaintiff's FDCPA claims were not barred by *res judicata*, the Court should dismiss the claims because Plaintiff can not establish that either Cohan or W&S was a "debt collector" as that term is defined under the Act.  Third, Defendants argue that, even if Cohan and W&S could be considered "debt collectors" under the FDCPA, Plaintiff can not establish that Cohan's conduct during the August 3, 2007 deposition violated the FDCPA because the questioning of Plaintiff during the deposition can not be considered a "communication" under the FDCPA and because the presence of Plaintiff's counsel at the deposition "negates" her FDCPA claims.  Finally, Defendants argue that Cohan and W&S are immune from Plaintiff's alleged FDCPA claims because attorneys are immune from damage claims based on allegedly false statements made during judicial proceedings so long as the statements are related to the proceeding.

a.    *Res Judicata*

Defendants' first argument is that Plaintiff's FDCPA claims have already been litigated in *Purser I* and are thus barred under the doctrine of *res judicata*.  As set forth above, Plaintiff's claims in *Purser I* were dismissed with prejudice when Judge Forrester entered a Final Judgment on June 27, 2008.  In the Final Judgment terminating the *Purser I* action, Judge Forrester wrote:

19

> IT IS THEREFORE ORDERED that this action is hereby dismissed with prejudice as to all parties and all issues. The Clerk is directed to close the file. All relief not expressly granted in this judgment and in the order providing for dismissal is hereby denied.

*Purser I* Final Judgment [164] dated June 27, 2008, at 1.

Under the principle of *res judicata*, a final judgment on the merits in a civil action operates to preclude a party, or those in privity with that party, from re-litigating in a subsequent proceeding issues that were or could have been raised in the original action. Federated Dep't Stores, Inc., v. Moitie, 452 U.S. 394, 398, 101 S. Ct. 2424, 2428 (1981). The doctrine is "a rule of fundamental and substantial justice, of public policy and of private peace," operating to protect defendants against multiplicious litigation over the same claims, and accordingly, may not be overridden based on equitable considerations. Id., 452 U.S. at 401, 101 S. Ct. at 2429 (internal quotes omitted). "The doctrine of *res judicata* is one of finality, providing that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights and responsibilities of the parties and their privies. As to the parties to the prior proceeding and their privies, *res judicata* constitutes an absolute bar to a subsequent judicial proceeding involving the same cause of action." Baptiste v. IRS, 29 F.3d 1533, 1539 (11th Cir. 1994).

For *res judicata* to apply, four elements must be shown: (1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) identical parties (or their privies) in both actions, and (4) the same cause of action at issue in both cases. Hart v. Yamaha-Parts Distrib., Inc., 787 F.2d 1468, 1470 (11th Cir. 1986); Ray v. Tennessee Valley Auth., 677 F.2d 818, 821 (11th Cir. 1982). The fourth element is satisfied where the claims at issue arise out of the same nucleus of facts. Manning v. City of Auburn, 953 F.2d 1355, 1358-59 (11th Cir. 1992); Hart, 787 F.2d at 1470.

Plaintiff argues that *res judicata* does not bar the claims asserted in the instant action against Cohan and W&S because the Compromise and Release Agreement entered into by the parties in *Purser I* expressly reserved the right of the Plaintiff to proceed with separate FDCPA claims against Cohan and W&S, even after the dismissal of the claims that were asserted against the named *Purser I* defendants.[2] The Eleventh Circuit has held that, when a judgment is entered on the basis of a settlement agreement between the parties, courts must look to the terms of the settlement

---

[2] Plaintiff's Motion for Leave to File Compromise and Release Agreement Under Seal [10] is granted, *supra*. Defendants have not disputed Plaintiff's allegation that the Compromise and Release Agreement entered in *Purser I* expressly reserved the right of Plaintiff to pursue separate claims under the FDCPA against Cohan and W&S, but to the extent that the Compromise and Release Agreement did not do so, Defendants may refile a Motion to Dismiss on that ground.

agreement itself to determine the operation of *res judicata* on any subsequent claims.

See Norfolk Southern Corp. v. Chevron USA, Inc., 371 F.3d 1285, 1289-90 (11th Cir. 2004).

> In determining the *res judicata* effect of an order of dismissal based upon a settlement agreement, we should also attempt to effectuate the parties' intent. The best evidence of that intent is, of course, the settlement agreement itself. Consequently, the scope of the preclusive effect of the 1977 Dismissal should not be determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement, as interpreted according to traditional principles of contract law. . . . When a defendant signs a settlement agreement stating that only some claims will be precluded in the future, it is as if the defendant is preemptively waiving any potential *res judicata* defense he would have had as a result of the dismissal to which the parties consent under the agreement. Thus, we are not treating a dismissal based upon a joint stipulation differently than any other judgment; we simply recognize that a concomitantly created settlement agreement may fairly be read as waiving certain *res judicata* rights to which the dismissal would otherwise give rise.

Id. at 1289.

Defendants do not dispute Plaintiff's contention that the Compromise and Release Agreement entered in *Purser I* expressly reserved the right of Plaintiff to pursue separate claims under the FDCPA against Cohan and W&S. Defendants argue, however, that, despite any agreement between the parties in *Purser I*, the Final Judgment entered into by Judge Forrester operates as *res judicata* on Plaintiff's claims

22

in the instant action.  As discussed above, the *Purser I* Final Judgment stated that "[a]ll relief not expressly granted in this judgment and in the order providing for dismissal is hereby denied."  *Purser I* Final Judgment [164] dated June 27, 2008, at 1.  Defendants argue that, because the *Purser I* Final Judgment did not include any language that expressly reserved the Plaintiff's right to bring separate claims under the FDCPA against Cohan and W&S, the Norfolk Southern case does not apply and the Court need not look at the terms of the *Purser I* Compromise and Release Agreement to determine whether Defendants waived their right to assert a *res judicata* defense in the instant action.

The Court disagrees with Defendants and finds that the holding of Norfolk Southern applies to the instant action, depriving the Defendants of the *res judicata* defense.  The Court first notes that the Final Judgment was prepared by the parties and attached to the parties Joint Motion to Dismiss in *Purser I*.  See Joint Motion to Dismiss [162] filed in *Purser I* on June 25, 2008.  Furthermore, it is clear from the record of *Purser I* that the Final Judgment was entered as a direct result of the parties' entering into the voluntary Compromise and Release Agreement; indeed the parties so state in their Joint Motion to Dismiss.  See Joint Motion to Dismiss [162] filed in *Purser I* on June 25, 2008.  Accordingly, under the plain language of Norfolk

23

<u>Southern</u>, the Court must consider the terms of the Compromise and Release Agreement entered in *Purser I* in order to determine the parties' intent regarding the Plaintiff's right to pursue separate claims against Cohan and W&S based on Cohan's conduct during the August 3, 2007 deposition of Plaintiff. As the <u>Norfolk Southern</u> court stated:

> Norfolk contends that we must look beyond the terms of the Settlement Agreement itself to determine the full range of claims that the parties intended to preclude in the future. As Norfolk points out, however, a settlement agreement is essentially a contract and is subject to the traditional rules of contract interpretation. Where the plain meaning of an agreement is clear, we may not go beyond the four corners of the document to look for additional evidence of the drafters' intentions. . . . In conclusion, where the parties stipulate to having a case dismissed, a somewhat modified form of *res judicata* applies to the written settlement agreement upon which such dismissal is predicated, if one exists.

<u>Norfolk Southern</u>, 371 F.3d at 1290-91.

In this case, Plaintiff contends that the Compromise and Release Agreement entered into by the parties in *Purser I* precludes the Defendants from asserting the *res judicata* defense in the instant action. Although Plaintiff has not yet filed the *Purser I* Compromise and Release Agreement in the instant action,[3] the Defendants do not

---

[3] <u>See</u> note 2, *supra*.

24

dispute the Plaintiff's contention that she reserved the right to bring separate claims against Cohan and W&S.  Under these circumstances, the Court can not dismiss the Plaintiff's claims on *res judicata* grounds.

### b.    Debt Collector under the FDCPA

Defendants next argue that, even if the Plaintiff's FDCPA claims are not barred by principles of *res judicata*, the Court should dismiss the claims because Plaintiff can not establish that either Cohan or W&S is a "debt collector" as that term is defined under the FDCPA.  Defendants concede that the Plaintiff has alleged in her Complaint that both Cohan and W&S are "debt collectors" under the Act.  See Compl. [1] at ¶ 8 ("Upon information and belief, defendants Weinstock and Cohan are 'debt collector' within the meaning of § 1692a(6), collecting consumer debts as defined by § 1692a(5) of the Act.").  Defendants contend, however, that "there is no set of facts which support Plaintiff's assertion that Cohan is a debt collector."  Def. Br. [3] at 12.

The FDCPA is designed "to eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  A debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts

25

to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another."  15 U.S.C. § 1692a(6).  Furthermore, the Supreme Court has held that an attorney who regularly engages in debt collection activities can be considered a "debt collector" under the Act, "even when that activity consists of litigation."  Heintz v. Jenkins, 514 U.S. 291, 299 (1995).

As discussed above, the Court may not consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6); instead, the Court must accept the allegations of the Plaintiff's pleadings as true.  In order for a complaint to survive a motion to dismiss under Rule 12(b)(6), it need not contain detailed factual allegations, but "only enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007); see also Horton v. Williams, 2007 WL 1575974, *1 (M.D. Ala. 2007).

In the instant action, Plaintiff has alleged in the Complaint that both Cohan and W&S are "debt collectors" as that term is defined by the FDCPA.  The Court finds that the Plaintiff's allegation is sufficient to withstand Defendants' Motion to Dismiss. Although Defendants argue that Cohan was not acting as a debt collector at the time that Cohan questioned Plaintiff during her August 3, 2007 deposition, the issue of whether Cohan was actually *acting* as a debt collector is an independent inquiry

26

separate from whether he could be considered a "debt collector" under the FDCPA definition. The only issue for the Court to resolve is whether Plaintiff has alleged sufficient facts that would enable her to establish that Cohan meets the definition of a person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6). In responding to Defendants' Motion to Dismiss, Plaintiff is not required to produce evidence sufficient to prove her allegation that Cohan is a debt collector or to otherwise attempt to *prove* her allegation; instead, she need only allege sufficient facts to state a claim that is plausible on its face.

The Court finds that Plaintiff has alleged enough facts to state a claim to relief that is plausible on its face, and thus, the Court rejects Defendants' argument that Plaintiff's FDCPA claims must be dismissed on the grounds that she has failed to allege that Cohan and W&S are debt collectors under the Act.

c.    <u>Violations of the FDCPA</u>

Defendants next argue that, even if Cohan and W&S could be considered "debt collectors" under the FDCPA, Plaintiff can not establish that Cohan's conduct during the August 3, 2007 deposition violated the FDCPA because the Cohan's questioning

of Plaintiff during the deposition can not be considered a "communication" under the FDCPA, and further, the presence of Plaintiff's counsel at the deposition "negates" her FDCPA claims.

Plaintiff alleges that Cohan's conduct during the Plaintiff's August 3, 2007 deposition violates the FDCPA because Cohan's questioning of Plaintiff can be considered a "communication" as that term is defined in the Act. The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Defendants argue that Plaintiff's FDCPA claims must be dismissed because Cohan's questioning of Plaintiff during the August 3, 2007 deposition is not a "medium" and thus can not be considered a "communication" as that term is defined by the FDCPA.

Plaintiff's contention that a deposition can be considered a "medium" of communication under the FDCPA appears to be a novel one. The FDCPA does not define the term "medium" but Webster's New College Dictionary defines "medium" in relevant part as follows:

> 2. An intervening substance through which something is transmitted or carried on, as an agency for transmitting energy. 3. An agency by which something is conveyed, accomplished, or transferred <money as a

28

*medium* of exchange> 4. pl. **media**. A means of mass communication, as magazines, newspapers, or television.

WEBSTER'S II NEW COLLEGE DICTIONARY (1995). Significantly, each definition includes the idea that a "medium" is an "intermediary" or an "agency" by which something is accomplished; such a definition would appear to exclude a conversation that occurred between two people without any intermediary device or agency whatsoever, such as a letter sent through the mail, a telephone call, or a facsimile.

The Court notes that although Plaintiff alleges that a "deposition" can be considered a "medium" of communication, the actual circumstances of the deposition in this action involve the attorney – in this case, Cohan – sitting across a table from Plaintiff and asking her questions while her attorney sits beside her. While the conversation between Cohan and Plaintiff was for the purpose of a deposition and was thus being transcribed for the purposes of discovery in a lawsuit, there is no allegation that Cohan was communicating with Plaintiff through the telephone or any kind of teleconferencing equipment. Instead, it was a conversation between two people that took place without any intermediary device whatsoever.

Based on the plain language of the FDCPA, it is not clear that such a conversation between two people without the use of any medium whatsoever – such

29

as a letter or telephone call – would be considered a "communication" under the FDCPA. If the drafters of the FDCPA intended for *any* communication regarding a debt to be considered a "communication" under the terms of the Act, the phrase "through any medium" would not be necessary. In other words, the inclusion of the phrase "through any medium" must have some meaning or it would not have been included. The drafters could have chosen to define a "communication" as "the conveying of information regarding a debt directly or indirectly to any person," but they deliberately chose to include the words "through any medium" to limit the types of communications that were covered by the Act to those communications that were made through a medium, not those communications that were made directly *without* any medium at all. Accordingly, the Court finds that, merely because the conversation between Cohan and Plaintiff was taking place during a deposition, the facts and circumstances surrounding the deposition would not transform the conversation into a "communication" if it would not otherwise be so under the Act.

Furthermore, the Eleventh Circuit has held that a legal action does not constitute an "initial communication" within the meaning of the FDCPA. Vega v. McKay, 351 F.3d 1334, 1337 (11th Cir. 2003) (*per curiam*). If a legal action can not be considered an "initial communication" under the FDCPA, it follows that other

30

types of contact that occur strictly within the bounds of a legal action – such as depositions, interrogatories and other methods of discovery – would also not be considered a "communication" under the FDCPA.

In <u>Vega</u>, the plaintiffs were debtors and the defendants were an attorney and a law firm representing a creditor who brought an action in small claims court to recover rent allegedly owed by the plaintiffs. <u>Vega</u>, 351 F.3d at 1335. After the attorney of the creditor sent the plaintiffs a package containing a civil complaint and summons, the plaintiffs filed a separate action against the attorney alleging that the complaint package was an "initial communication" under the FDCPA. <u>Id.</u> The district court granted the defendants' motion to dismiss on the ground that a civil complaint can not be considered an "initial communication" under the FDCPA and the Eleventh Circuit affirmed the district court's ruling in favor of the defendants. As the <u>Vega</u> court explained:

> Neither this Court nor any other circuit has addressed the issue of whether a legal action constitutes an "initial communication" within the meaning of § 1692g(a). Under factual circumstances similar to the instant case, the Middle District of Florida has held that "it is more consistent with the purpose and intent of Congress . . . [that] the term 'communication' as used in the Act does not include a 'legal action' or pleadings or orders connected therewith." *McKnight*, 176 F.Supp.2d at 1306, 1308 (noting that the purpose of the FDCPA is to "curb abusive debt collection practices, not legal actions"). Significant to the court's

31

holding in *McKnight* was the fact that the Federal Trade Commission does not consider a legal action to be a "communication" in connection with the collection of a debt.  *See id.* at 1305-06 (noting that the FTC has stated in non-binding commentary that "[a] debt collector's institution of formal legal action against a consumer . . . is not a 'communication in connection with collection of any debt,' and thus does not confer section 809 notice-and-validation rights on the consumer") (citing 53 FR 50097, 50108). . . . We now conclude that the holding of *McKnight*, that a legal action does not constitute an "initial communication" within the meaning of the FDCPA, accurately states the law. . . . We agree with the conclusion set forth in *McKnight* that it seems far more consistent with the purpose of the Act that the term "communication" as used does not include a "legal action or pleading."

Vega, 351 F.3d at 1336-37 (*citing* McKnight v. Benitez, 176 F.Supp.2d 1301 (M.D. Fla. 2001)).

In this action, Plaintiff is not alleging that a complaint constituted an "initial communication" but she is alleging that an attorney's questions directed to her during a deposition can be considered a "communication" under the FDCPA.  The Court concludes that it would be contrary to the Eleventh Circuit's holding in Vega to find that an attorney's questioning of a plaintiff during a deposition held in connection with a legal proceeding can be considered a "communication" under the FDCPA.

Indeed, under the circumstances in this case, it would make even less sense to find that Cohan's questioning of Plaintiff could be considered a "communication"

under the FDCPA.  In <u>Vega</u>, the complaint and summons were brought against the plaintiffs for the purpose of attempting to collect a debt; in the instant action, Cohan was deposing Plaintiff in the course of defending a lawsuit brought by the Plaintiff under the FDCPA.  In essence, it was the Plaintiff who initiated the "communication" by filing the lawsuit against the *Purser I* defendants.  Under Plaintiff's theory, any attorney who defends a debt collector in an FDCPA action brought by the debtor would thereafter be subject to a separate action under the FDCPA based on statements or questions directed to the debtor during the representation of the debt collector in the FDCPA action.  The Court finds that nothing in the language of the FDCPA, nor the case law interpreting the Act, supports Plaintiff's theory in this action.  Plaintiff has not cited a single case, and the Court has not been able to uncover a single case, in which a plaintiff asserted claims under the FDCPA against an attorney who was not acting as a debt collector, but was merely defending a debt collector, in an action brought under the FDCPA.

If Plaintiff's theory were taken to its logical conclusion, any attorney defending any claim brought under the FDCPA would be prohibited from questioning a plaintiff during a deposition or trial if the plaintiff or her attorney did not give her prior consent or if the court did not give its express permission.  <u>See</u> 15 U.S.C. § 1692c(a)(2)

33

("Without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney."). If the Court agrees with the Plaintiff's theory that an attorney's questions during a deposition would be considered a "communication" under the FDCPA, then an attorney defending a debt collector against an FDCPA claim would be flatly prohibited from speaking to the plaintiff under 15 U.S.C. § 1692c(a)(2), even if the plaintiff's attorney is sitting by her side during the entire deposition, ready and able to object to any questions considered improper and appropriate. Similarly, if Plaintiff's interpretation of "communication" were to be adopted, an attorney acting as a debt collector could not depose the debtor or examine her at trial after the debtor notifies the attorney to cease further communications. 15 U.S.C. § 1692c(c). Both these results would be nonsensical and thus caution against interpreting direct oral communication to be a "communication . . . through any medium."

Finally, the presence of the Plaintiff's attorney during the August 3, 2007 deposition also leads the Court to conclude that Cohan's conduct during that deposition can not be considered a "communication" that gives rise to any separate and independent claim under the FDCPA. The FDCPA was designed to prevent the

harassment and abuse of unsophisticated debtors by debt collectors who are attempting to collect a debt.  Plaintiff has not cited a single case holding that a consumer may assert a claim under the FDCPA against an attorney who was questioning her during a deposition in which the consumer's attorney is by her side the entire time, ready, willing, and able to object to any questions set forth by the attorney.  See, e.g., Kropelnicki v. Siegel, 290 F.3d 118 (2d Cir. 2002) ("Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior."); see also Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 938-39 (9th Cir. 2007) (communications to a consumer's attorney do not fall under the FDCPA because the attorney acts as an intermediary).

In sum, the Court finds that Plaintiff has failed to state a claim under the FDCPA against Cohan and W&S because Plaintiff has failed to establish that Cohan's questioning of Plaintiff during the August 3, 2007 deposition taken in *Purser I*, in the presence of her attorney, could be considered a "communication" as that term is defined by the FDCPA.  Plaintiff has failed to cite to a single case interpreting the FDCPA to allow such a claim to be brought and the Court has not found a single case holding that such a claim would be viable under the FDCPA.  Moreover, the Court

concludes that the Eleventh Circuit's holding in <u>Vega v. McKay</u>, 351 F.3d 1334, 1337 (11th Cir. 2003) (*per curiam*) that a legal action does not constitute an "initial communication" under the FDCPA compels this conclusion.  Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss [3] be **GRANTED** with respect to Plaintiff's FDCPA claims, as asserted in Counts One, Two, Three, and Four of the Complaint.

Because the Court concludes that Cohan's questioning of Plaintiff during the August 3, 2007 deposition in Purser I is not a "communication" under the FDCPA, the Court declines to address Defendants' remaining argument that Cohan and W&S are immune from Plaintiff's alleged FDCPA claims because attorneys are immune from damage claims based on allegedly false statements made during judicial proceedings so long as the statements are related to the proceeding.[4]

_____

[4] While Defendants did not base their Motion to Dismiss on their conduct, the Court notes that the sections of the FDCPA upon which Plaintiff bases her action all require that the prohibited conduct occur either "in connection with the collection of any debt" or in an "attempt to collect any debt."  <u>See</u> 15 U.S.C. §§ 1692c, 1692d, 1692e, and 1692f.  In this case, Defendants were defending a lawsuit brought against their client, a debt collector that Plaintiff alleged violated the FDCPA.  That Cohan asked questions during the course of the deposition about the debt and Plaintiff's intent to repay it, such questions do not transform their function from defending an FDCPA action to collecting a debt.  Because Defendants were neither conducting Plaintiff's deposition "in connection with the collection of any debt" or in any "attempt to collect any debt," Plaintiffs' suit against them should be dismissed.

(3)    Plaintiff's Claims under Georgia law

In addition to her claims under the FDCPA, Plaintiff has also asserted claims against Defendants under the Georgia Fair Business Practices Act ("Ga. FBPA"), O.C.G.A. § 10-1-390 *et seq.*, and the Georgia Unfair or Deceptive Practices Toward the Elderly Act ("Ga. UPTEA"), O.C.G.A. § 10-1-850, *et seq.*, based on the same alleged conduct that gave rise to the Plaintiff's claim against Defendants under the FDCPA.

According to the Plaintiff's Complaint, this Court has only supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. See Compl. [1] at ¶ 4. The Supreme Court has explained that federal district courts should not entertain supplemental jurisdiction over state law claims as a matter of course:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); see also 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed

37

all claims over which it has original jurisdiction.").  In the instant action, the Court

concludes that the resolution of the Plaintiff's state law claims would be better served

in a state court that has a "surer-footed reading of applicable law."

Accordingly, the undersigned **RECOMMENDS** that the District Court decline

to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and

**RECOMMENDS** that Plaintiff's state law claims, as asserted in Counts Five and Six

of the Complaint, be **DISMISSED** without prejudice.  <u>See</u> 28 U.S.C. § 1367(c)(3).

### D.    Defendants' Motion for Sanctions

Defendants have moved for sanctions against Plaintiff under Rule 11 of the

Federal Rules of Civil Procedure and 15 U.S.C. § 1692k(a)(3).  Defendants argue that,

despite Judge Forrester's expressly cautioning Plaintiff in *Purser I* against the merits

of bringing separate claims against Cohan and W&S under the FDCPA based on

Cohan's conduct during the August 3, 2007 deposition, Plaintiff proceeded with

bringing the "frivolous" claims in the instant action.  Defendants contend that

sanctions under both Rule 11 and 15 U.S.C. § 1692k(a)(3) are appropriate.

Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

**Representations to the Court.** By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:

(1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b).

Further, 15 U.S.C. § 1692k(a)(3) provides, in relevant part, that: "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."

As discussed above, Judge Forrester entered an Order in *Purser I* on June 23, 2008, in which he cautioned Plaintiff that it was doubtful that any claims brought

39

under the FDCPA against Cohan and W&S arising out of Cohan's conduct during the

August 3, 2007 deposition would have merit:

> The court notes one other matter that is unrelated to the instant case. Mr. Weinstock attached correspondence from Plaintiff's counsel to Mr. Cohan and the firm of Weinstock & Scavo, dated May 5, 2008, serving as notice under Georgia's Fair Business Practices Act of 1975, O.C.G.A. §§ 10-1-390, *et seq*. In that letter, Plaintiff's counsel seeks $125,000 from Mr. Cohan and $125,000 from Weinstock & Scavo based upon the conduct at the August 3 deposition pursuant to the Fair Debt Collection Practices Act, the Georgia Fair Business Practices Act, and the Georgia Unfair or Deceptive Practices Toward the Elderly Act. Before such action would be undertaken by Plaintiff's counsel, the court assumes Plaintiff's counsel would need to consider whether the action had any arguable merit. While the Fair Debt Collection Practices Act can be said to cover the actions of debt collectors, including attorneys, there is no indication that it covers acts of litigation in defending a suit under the Fair Debt Collection Practices Act. *See, e.g.*, *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 234-35 (4th Cir. 2007) (noting the "FDCPA does not apply to commercial litigation: it covers debt collection . . . ."). *See also Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007) (communications to debtor's attorney not actionable under FDCPA because when "an individual is represented by counsel who fields all communications relevant to the debt collection, these concerns quickly evaporate"); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior.").

*Purser I* Order [161] dated June 23, 2008, at 1-3.

Defendants argue that, based on the language in Judge Forrester's Order of June 23, 2008 in *Purser I*, the Plaintiff was put on notice that any claims brought under the FDCPA against Cohan and W&S would be considered "frivolous" and thus, that Plaintiff's decision to bring such claims in the instant action should be subject to sanctions under Rule 11 and 15 U.S.C. § 1692K(a)(3). While the Court has held herein that Plaintiff's FDCPA claims are subject to dismissal and has recommended that Defendants' Motion to Dismiss [3] be granted, the Court further finds that Plaintiff's claims are not so contrary to existing law that they are deemed frivolous. Indeed, the Court finds that Plaintiff's legal theories are so novel that it appears that no court has squarely held that such claims are not viable under the FDCPA. In addition, the Court finds that Defendants have failed to demonstrate that Plaintiff has brought the claims in the instant action against Defendants in bad faith or solely for the purpose of harassment.

Accordingly, **IT IS RECOMMENDED** that Defendants' Motion for Sanctions [11] be **DENIED**.

41

III.   **CONCLUSION AND RECOMMENDATION**

For all the above reasons, Defendants' Motion to Transfer Case to Judge Forrester [4] is **DENIED**, and Plaintiff's Motion for Leave to File Compromise and Release Agreement Under Seal [10] is **GRANTED**.

Furthermore, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss [3] be **GRANTED** and that Defendants' Motion for Sanctions [11] be **DENIED**.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned.  Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

IT IS SO ORDERED AND RECOMMENDED this 6th day of November, 2008.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE

42